**MOUNTAIN STATES POWER CO. v. CITY OF FORSYTH et al.**

**No. 183, Civil.**

District Court, D. Montana, Billings Division.

July 16, 1941.

390

Toomey, McFarland & Chapman and Gunn, Rasch, Hall & Gunn, all of Helena, Mont., for plaintiff.

F. F. Haynes, of Forsyth, Mont., for City of Forsyth.

Kyle & Kyle, of St. Paul, Minn., for Fairbanks, Morse & Co.

PRAY, District Judge.

The questions presented here arise over a motion by plaintiff for a judgment on the pleadings in its favor for the reason that the answer filed herein "fails to state any defense in law or in fact to the cause of action stated in the complaint."

By this action plaintiff seeks an injunction to enjoin the defendant City of Forsyth, Montana, from entering into a contract with the defendant Fairbanks, Morse & Company, for the construction of a municipal electric lighting, heating and power plant, or, if said contract has been entered into, enjoining the defendant last named from constructing such plant.

From the complaint it appears that plaintiff is, and has been for several years, the owner of an electric light and power plant or system in said city, consisting in part of poles and wires in the streets and alleys of said city, and engaged in furnishing electric light and power to said city and the inhabitants thereof at rates prescribed by the Public Service Commission of Montana; that said plant or system was constructed by the predecessor in interest and ownership of the plaintiff. That the city authorities proposed to construct a municipal electric light, heat and power plant, and for that purpose entered into a contract with the defendant construction company for furnishing and constructing such a plant in and for said city, for the sum of $169,969,

payable in monthly installments, with interest at the rate of 5 per cent per annum, solely out of the net earnings of said plant, in accordance with the plans and specifications and bid of said defendant construction company. That an election was held for the approval of the tax-paying electors of said city, and that the proposed contract at such election was approved by a majority vote. The complaint alleges, in paragraph VIII, that the city under said contract is assuming to exercise power and authority conferred by Chapter 115 of the Laws of Montana of 1937, as amended by Chapter 111 of the Laws of Montana of 1939. The answer alleges that the city in entering into said contract is proceeding under authority conferred upon it by the decisions of the Supreme Court and statutes of Montana, including the statutes referred to in paragraph VIII of the complaint. The answer further alleges that the present plant was constructed and first operated pursuant to a franchise granted by the city, but that such franchise has expired, and that plaintiff is now occupying the streets and alleys solely during the will and pleasure of the city.

The jurisdictional amount alleged in the complaint is denied in the answer, but the admission further appears in the answer of the amount involved in the construction of the municipal electric plant and, according to the authorities cited, that is sufficient to determine the question of jurisdiction, which seems to be the value of the object sought to be attained in this litigation. Without discussing the question minutely as set forth in the voluminous briefs of counsel, it seems quite clear that plaintiff has a franchise, Sec. 6645, R.C.M. 1935, although one that is not exclusive, and, as contended by defendants, one that could not prevent the city from constructing its own plant and operating in competition with plaintiff, to which the rule of "damnum absque injuria" might apply. But plaintiff contends that if the city is without authority to make such a contract then the injunctive relief sought should be granted irrespective of the fact that its franchise is not exclusive, so that the decision here seems to rest upon the authority of the city to act in the manner contemplated by its contract, in other words, whether it has entered into a valid contract with the construction company, although authorized by a majority of the tax-paying voters so to do.

It was held that the holder of a franchise to operate an electric light plant, although not exclusive, would be protected against the illegal acts of others attempting to exercise the same privilege conferred by the franchise, and against illegal competition. Arkansas-Missouri Power Co. v. City of Kennett, 8 Cir., 78 F.2d 911; Frost v. Corporation Commission, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483; City of Campbell v. Arkansas-Missouri Power Co., 8 Cir., 55 F.2d 560. Is it a legal and binding contract? Section 5039.63, in so far as applicable here, reads as follows: "The city or town council has power: To contract an indebtedness on behalf of a city or town, upon the credit thereof, by borrowing money or issuing bonds for the following purposes, to-wit: Erection of * * * lighting plants."

Defendants contend that borrowing money or issuing bonds, as provided by the statute, is permissive only and does not prohibit the city from entering into the contract under consideration; opposed to this view is the contention of plaintiff that where a statute authorizes a city to acquire a lighting plant, upon the credit of the city, by borrowing of money or issuing of bonds, such method is exclusive, and this latter contention would seem to be sustained by the greater weight of authority as will appear from an examination of the authorities cited by counsel for both sides, and also by the recent well reasoned case of Whipps, Sr. v. Town of Greybull, 109 P.2d 805, decided by the Supreme Court of Wyoming February 4th, 1941. Where the statute prescribes the mode of exercising the power it must be pursued in all substantial particulars. Shapard v. City of Missoula, 49 Mont. 269, 141 P. 544.

The court has considered the supplemental brief of plaintiff in which it contends that the contract in question is also unenforcible and invalid because of want of mutuality. The contract provides that: "The contractor will not be required to begin work until ten days after litigation for the ousting of the power company now serving the city from its streets has been finally determined in favor of the city." In another paragraph of the contract the city promises promptly to institute legal action to have it determined that the plaintiff has no right to use or occupy the streets, alleys or public grounds of the city with poles, wires or other instrumentalities, and that it be required to remove all its equipment

therefrom. If the court is correct in holding that plaintiff has a franchise, then the contractor would not be obliged to construct the plant since the plaintiff could not be ousted as promised by the city in the contract. If the contract is invalid, then a new contract could not be made with this or any other contractor by the defendant city for the construction of the plant since it appears that the statute under which it claimed authority to act expired March 15, 1941. Chap. 115, Laws of 1937; Chapter 111, Laws of 1939. It is quite evident from the terms of the contract that authority was not given the city by the voters to construct and operate a plant in competition with plaintiff, but upon the assurance, to be strongly inferred from the language of the contract, that plaintiff would be ousted from the city and required to remove all its equipment.

The contractor does not have to begin work until ten days after the final determination of the court that plaintiff is to be ousted. Such a contract would seem to come within the rule relied upon by plaintiff's counsel. Mutuality of obligation is an essential element of every enforceable contract. Mutuality is absent when one only of the contracting parties is bound to perform, and the rights of the parties exist at the option of one only. 13 C.J. 331, 17 C.J.S., Contracts, § 100. Each party must have the right at once to hold the other to a positive agreement. Counsel cited a decision by Judge Hunt in Pocatello v. Fidelity & Deposit Co., 9 Cir., 267 F. 181, which appears to be precisely in point.

In discussing the effect of the repeal of a statute reference was made to 59 C.J. pgs. 1185 and 1187, which provides in part that "the repeal of a statute does not operate to impair or otherwise affect rights that have been vested or accrued while the statute was in force. This rule is applicable alike to rights acquired under contracts and to rights of action to recover damages for torts."

Aside from the lack of authority to enter into such a contract on the part of the city, it would now appear from the argument of counsel for plaintiff, to which there has been no reply, that the contract itself is invalid and unenforceable, thereby claiming an additional reason why plaintiff should prevail. Counsel for defendants have presented an able discussion of the problems involved, which in some respects

are difficult of solution, but if the court is in error, it is not one that can not be speedily corrected.

As may be inferred from the foregoing views, the Court was not impressed with the argument of counsel declaring Chapter 111 of the laws of 1939 unconstitutional, but on the other hand it may also be inferred that the court does not believe that this Chapter has any application to the present controversy, or the material questions here raised, nor does it supercede or modify in any respect the plain and specific mandatory provisions of Section 5039. 63, R.C.M.

Wherefore, being duly advised and good cause appearing therefor, in the opinion of the court the plaintiff should prevail in its motion, and it is so ordered.