[No. 3229-1.  Division One.  November 8, 1976.]

INTERCHANGE ASSOCIATES, ET AL, *Respondents*, v.
INTERCHANGE, INC., ET AL, *Appellants*.

*Flynn, Anderson & Adelstein* and *William R. Anderson*, for appellants.

*Schweppe, Doolittle, Krug, Tausend, Beezer & Beierle* and *Robert R. Beezer*, for respondents.

CALLOW, J.—The defendants, Greta Creswell and Leo Gabay, appeal from a judgment entered for the plaintiffs, Jerome Baruffi, Larry Baugh, Larry T. Hawkes, James A. Holman, and J. F. McGovern, directing the defendants to specifically perform a contract for the management of a corporation, Interchange, Inc. The appeal challenges the validity and enforceability of the contract. We find the contract to have been unsupported by consideration and reverse.

On May 26, 1969, the plaintiffs (the anticipated limited partners of the planned Interchange Associates) and the defendants (the directors and 100 percent shareholders of Interchange, Inc.) agreed in a writing entitled "Contract for Management of Interchange, Inc." that

1. The directors of Interchange, Inc. shall be Greta S. Creswell, Leopold F. Gabay, James A. Holman, Larry Baugh, J. F. McGovern and Jerome Baruffi, and Larry T. Hawkes.

2. The directors herein named shall have the right to manage the affairs of the corporation for a period of ten years or until their sooner resignation. At any time dur-

ing said period a majority of said directors may require upon written request that the shares of Interchange, Inc. be conveyed into a statutory voting trust naming a director or any of them as voting trustees.

3. This agreement shall be implemented and the directors installed as soon as possible after final adoption of the limited partnership agreement creating Interchange Associates, of which Interchange, Inc. shall be General Partner and the closing of the purchase by Interchange Associates of the real property on which it has an option.

The parties proceeded to form Interchange Associates and the parcel of realty was purchased. Interchange, Inc. served as the general partner, and the plaintiffs became 5 of the 13 limited partners, as well as directors of Interchange, Inc., pursuant to the management contract. Performance under the management contract continued for almost 4 years until, on May 21, 1973, the defendants held a special shareholders' meeting, removed the plaintiffs as directors, and terminated the management contract.

The plaintiffs initiated an action against the defendants for specific performance of the management contract. The Superior Court entered judgment directing specific performance of the management contract, and the defendants initiated this appeal.

The primary contention advanced on appeal is that the management contract is invalid. The defendants argue that the promise of the plaintiffs to serve as directors for 10 years or until an earlier resignation is illusory and does not constitute sufficient consideration to make the defendants' promise to elect the plaintiffs as directors enforceable.

An "illusory promise" is a purported promise that actually promises nothing because it leaves to the speaker the choice of performance or nonperformance. When a "promise" is illusory, there is no actual requirement upon the "promisor" that anything be done because the "promisor" has an alternative which, if taken, will render the "promisee" nothing. When the provisions of the supposed promise leave the promisor's performance optional or entirely within the discretion, pleasure, and control of the

promisor, the "promise" is illusory. As stated in Restatement of Contracts § 2, comment *b* (1932):

> An apparent promise which according to its terms makes performance optional with the promisor whatever may happen, or whatever course of conduct in other respects he may pursue, is in fact no promise, although often called an illusory promise.

An "illusory promise" is neither enforceable nor sufficient consideration to support enforcement of a return promise. *Sandeman v. Sayres*, 50 Wn.2d 539, 314 P.2d 428 (1957); *Winslow v. Mell*, 48 Wn.2d 581, 295 P.2d 319 (1956); *Spooner v. Reserve Life Ins. Co.*, 47 Wn.2d 454, 287 P.2d 735 (1955); *Calkins v. Boeing Co.*, 8 Wn. App. 347, 506 P.2d 329 (1973); 1 S. Williston, *A Treatise on the Law of Contracts* § 104 (3d ed. 1957); 1 A. Corbin, *Corbin on Contracts* § 145 (1963).

It is also the rule that contractual provisions that reserve to one of the parties an unconditional right to terminate the contract render the contract invalid. When an absolute right to cancel a promised performance is retained, the promise is illusory and insufficient consideration to support enforcement of the return promise. According to Williston:

> That a promise which in terms reserves the option of performance to the promisor is insufficient to support a counter-promise is well settled. . . . An agreement wherein one party reserves the right to cancel at his pleasure cannot create a contract.

(Footnotes omitted.) 1 S. Williston, *A Treatise on the Law of Contracts* § 105, at 417-18 (3d ed. 1957). The contract in *Warner v. Channell Chem. Co.*, 121 Wash. 237, 208 P. 1104 (1922), required a salesman to perform and the employer to employ for a specific period of time, and thereafter until termination as provided. An initial specific mutual obligation was present and consideration thereby supplied in the *Warner* case that is not in the contract before us. When there is an absolute right to not perform at all, there is an absence of consideration as observed by the comment to clause *e* of section 84 of Restatement of Contracts (1932):

> [A]n unconditional reservation by a promisor of the

privilege of avoiding performance or cancelling his agreement precludes a promise or apparent promise from being sufficient consideration . . .

See also Miami Coca-Cola Bottling Co. v. Orange Crush Co., 296 F. 693 (5th Cir. 1924); Pocatello v. Fidelity & Deposit Co., 267 F. 181 (9th Cir. 1920); R.F. Baker Co. v. P. Ballantine & Sons, 127 Conn. 680, 20 A.2d 82, 137 A.L.R. 916 (1941); Larkins v. St. Paul & Tacoma Lumber Co., 35 Wn.2d 711, 214 P.2d 700 (1950); Annot., 137 A.L.R. 919 (1942); 17 Am. Jur. 2d Contracts § 107, at 454 (1964).

Here, the plaintiffs "promised" to serve as directors for 10 years or "until their sooner resignation." The plaintiffs expressly reserved the right to resign at any time. The resignation clause is indistinguishable from a contractual provision permitting one party to arbitrarily, unilaterally, and unconditionally cancel the contract. It follows that the plaintiffs' "promise" is insufficient consideration to support enforcement of the executory portion of the defendants' counterpromise. The contract is invalid and the judgment decreeing specific performance of the contract must be reversed. The remaining assignments of error need not be discussed.

Reversed.

WILLIAMS, C.J., and REVELLE, J. Pro Tem., concur.

Petition for rehearing denied April 29, 1977.