[No. 2726–3.   Division Three.   February 6, 1979.]

VICTOR J. FELICE, *Appellant,* v. PAUL CLAUSEN, ET AL, *Respondents.*

*Felice, Clayton & Anderson* and *Dennis W. Clayton,* for appellant.

*Thomas H. Brown,* for respondents.

MUNSON, J.—Victor J. Felice, a potential buyer of a condominium unit, appeals from a summary judgment in favor of Paul Clausen, owner of the condominium unit. The sole question on appeal is whether under the terms of a condominium declaration the owner had the right to reject or withdraw the offer to buy the unit of the condominium association's designee, Felice. We affirm.

The uncontroverted facts are that both Clausen and Felice were unit owners of Southcliff Plaza. Clausen entered into an earnest money agreement to sell unit 307 to a third party, subject to the approval of the condominium association. In compliance with a condominium declaration, Clausen submitted his written intent to sell to the association's board of directors. Shortly thereafter, the association submitted the name of Victor Felice as its designee to purchase the unit. Felice notified Clausen of his intent to buy the unit and offered $1,000 as earnest money for the sale. Two days later, Clausen notified Felice that pursuant to the provisions of the declaration, he had withdrawn his offer to sell the unit.

At issue here are two separate sections of the declaration.[1] The first section, entitled option to purchase, states in pertinent part that in the event of a sale, the association or its nominees shall have a "first option to purchase, . . . the respective unit on the same terms and conditions as are offered by the . . . unit owner to any third person." The second section provides for notice to the board and the procedures to be followed, stating that the "owner who has given such notice to the Board of Directors, upon receipt of the Board's reply . . . shall have fourteen (14) days either to accept the offer contained in the Board's reply, or to withdraw or reject the offer specified in his notice to the Board."

---

[1] "B. Provisions relating to Sale or Lease of Apartment Units.

"1. Option to Purchase.

"In the event of any sale, rental, lease or conveyance of any apartment unit, after the first conveyance thereof to an apartment unit owner, the Association of Owners or its nominees shall have a first option to purchase, rent or lease the

Felice contends that sections 1 and 2 provide all the elements necessary to the formation of a valid contract and when he, as the association's designee, "exercised the option," Clausen had a corresponding duty to convey the

---

respective unit on the same terms and conditions as are offered by the said apartment unit owner to any third person. Any attempt to resell, rent, lease, or convey said apartment unit, without prior offer to the Association of Owners, shall be wholly null and void and shall confer not title, interest or right whatsoever upon the intended purchaser, tenant, lessee or grantee.

"2. Notice to Board and Procedure.

"Should any apartment owner desire to sell, rent, lease or convey an apartment or any portion thereof, he shall, before making or accepting the offer to sell, purchase or rent, and before making any conveyance of the apartment, give to each member of the Board of Directors, written notice of his intent to sell, rent, lease or convey such apartment, or any interest therein, which notice shall contain the terms of the offer he has received which he wishes to accept, or the terms of the offer he is prepared to make and the name and address of the prospective purchaser, tenant or grantee. The Board of Directors shall, within fourteen (14) days after receiving such notice, either consent to the transaction specified in said notice, or by written notice to such owner designate one or more persons who are then apartment owners, or any other person or persons of satisfactory credit, who are willing to purchase, lease, rent or accept title upon the same terms as those specified in such owner's notice. In the alternative, the Board may exercise its option to purchase as set forth in Paragraph XII B (1) above.

"The owner who has given such notice to the Board of Directors, upon receipt of the Board's reply (said reply being other than a consent to the proposed transaction) shall have fourteen (14) days either to accept the offer contained in the Board's reply, or to withdraw or reject the offer specified in his notice to the Board. Failure of the Board to designate such person or persons within the fourteen (14) day period, or failure of such person or persons to make an offer on the requisite terms within said fourteen (14) day period, shall be deemed consent by the Board to the transaction specified in the owner's notice, and he shall be free to make or accept the offer specified in his notice to sell, lease, rent or convey. The owner must thereupon complete the transaction for which notice was given within ninety (90) days after the Board consents or is deemed to have consented under the terms hereunder. Failure of the owner to complete the transaction within that period of time shall require a new notice to the Board under the terms hereof.

"No apartment owner shall have any right to sell, lease, rent or convey his apartment or any interest therein, except as expressly provided herein. The sub–leasing or sub–renting of an apartment shall be subject to the same limitations as are herein made applicable to the leasing or rental thereof. The liability of an apartment owner under the terms of this item shall continue, notwithstanding the fact that he may have one or more times leased or rented his apartment in conformity with the provisions hereof."

property.[2] The crucial language in dispute is the sentence which reads: "The owner . . . shall have fourteen (14) days *either* to accept" the board's offer, "*or* to withdraw or reject the offer" of the third party. (Italics ours.) Felice interprets that sentence to read that the owner must accept the board's offer *and* reject the third party's offer. We disagree. By the use of the either/or alternative, the language of the declaration leaves the matter of choice in the hands of the owner. We concede the section is not a model of clarity, but if the association had intended its offer to be binding on the owner, the declaration would have been so written.

■ "A purported offer that reserves the power to withdraw at will even after an acceptance should not be described as an offer at all, but as an invitation to submit an offer." 1 A. Corbin, *Contracts* § 39 (1963). If the provisions of an agreement leave the promisor's performance entirely within his discretion and control, the "promise" is illusory. Where there is an absolute right not to perform at all, there is an absence of consideration. *Interchange Associates v. Interchange, Inc.*, 16 Wn. App. 359, 557 P.2d 357 (1976). Thus, Clausen's compliance with the condominium declaration, as a matter of law, did not constitute an offer as that term is understood in the law of contracts. Felice's offer was only one element necessary to form a valid contract. Acceptance and consideration were not present here.

■ Felice next contends that the use of the term "offer" in the two sections of the declaration is ambiguous and

---

[2]Felice cites as authority two cases, one involving a conditional option contract, *Wetherbee v. Gary*, 62 Wn.2d 123, 381 P.2d 237 (1963), and the other involving a right of first refusal, *Bennett Veneer Factors, Inc. v. Brewer*, 73 Wn.2d 849, 853, 441 P.2d 128 (1968). Neither case is applicable to the provisions of the declaration here. In *Wetherbee*, the court found a condition in the written agreement along with sufficient consideration to become a binding contract which could not be withdrawn or revoked. In *Bennett Veneer Factors, Inc.*, the court defined a right of first refusal agreement as one containing all the essential elements of a contract which gives a prospective purchaser the right to buy upon the seller's terms with the implied agreement that the owner will not sell to any other party at more favorable terms.

The condominium declaration here does not fall within such a definition nor does it fulfill the same purpose as a right of first refusal agreement.

inconsistent. We disagree. A reading of the declaration as a whole supports Clausen's contention that the unit owner is only required to notify the board either of an offer he has made or received. There is no mandate that the owner must sell to the board or its nominee; the declaration simply requires that the board consent to an offer made to or received by a third party within 14 days, purchase itself or propose its designee. If the board offers to purchase itself or through its designee, as already indicated, the owner may still reject or withdraw. The term "offer" is used consistently throughout in relation to the owner and the board; it is contingent on the owner's acceptance.[3] The word "offer" must be read within the context of the instrument itself and read in relation to the other terms and conditions of the declaration. The courts will not read ambiguity into a contract where the contractual language is unambiguous. *Jacoby v. Grays Harbor Chair & Mfg. Co.,* 77 Wn.2d 911, 917, 468 P.2d 666 (1970). From the language employed in the declaration and viewing all reasonable inferences therefrom, we find the trial court did not err in granting summary judgment for the unit owner, Clausen.

Judgment affirmed.

GREEN, C.J., and ROE, J., concur.

Reconsideration denied March 8, 1979.

Review denied by Supreme Court June 1, 1979.

---

[3]The third party's offer, having been conditionally accepted by the owner before submission to the board, was not affected. The conditional acceptance was based on the board's consent; if it consented, then the agreement by its terms with the third party was enforceable. If the board or its designee offered to purchase, then the owner could not sell to the third party and so that contract was unenforceable. That unenforceability does not affect the owner's right to reject the board or its designee's offer.