261 A.2d 841.

RALPH MACERA *et al. vs.* EARLE COHEN.

JANUARY 20, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. In this bill of complaint the complainants alleged that the description of a parcel of real estate which they had agreed to convey to the respondent is so vague, uncertain and indefinite as to require that their agreement be declared null and void and of no legal effect. The respondent denied this allegation and, in a cross bill, asked for specific performance of the promise to convey. The case was heard by a justice of the Superior Court sitting without a jury,[1] and the judgment entered declared that the agreement was null and void and of no legal effect, that it be expunged from the records of land evidence in the town of Johnston where it had been recorded, that the deposit paid by the buyer to the sellers be refunded, and that the respondent's prayer for specific performance be denied and dismissed. The respondent appealed.

The essential facts are not in dispute, and the case presents a pure legal question. It appears that the sellers desired to dispose of a tract of land located in the town of Johnston which consisted of approximately 50 acres, known as the Entwistle Farm. They listed it with a real estate broker, who in June of 1959, brought them together with the buyer. After discussing the terms of the sale, the parties entered into a purchase and sale agreement. Apart from the various terms and conditions customarily found in such

---

[1]The case, although commenced prior to the 1966 effective date of the Superior Court Rules of Civil Procedure, was not heard until 1968.

agreements, but not here pertinent, it provided that on or about December 1, 1959, the sellers would convey to the buyer by warranty deed, at a purchase price of $920 per acre, a portion of the farm described as follows: "30 acres more or less to be determined by survey. This acreage will comprise the land on this farm to which city water can be brought using the elevation of 220 as a guide to determining the boundaries."

Thereafter the buyer commissioned Waterman Engineering Company to survey the farm and to prepare a topographical map which he anticipated would delineate the exact boundaries of the land agreed to be sold. A copy of that map is an exhibit in the case. The buyer claims that this extrinsic evidence gives certainty to a description which admittedly does not meet the requirements of the Statute of Frauds.[2]

What the buyer appears to rely upon when he urges this contention is the principle which, broadly stated, permits incorporation by reference of a paper to be made in the future as a means of remedying a defect in an agreement which has been signed by the party to be charged in the action. 4 Williston, *Contracts*, §581 at 138-39 (3d ed. 1961). See *Cunha* v. *Callery*, 29 R. I. 230, 69 A. 1001.[3] If accepted, that principle can satisfy the Statute of Frauds' certainty

---

[2]Other examples of descriptive language which does not purport to describe any particular piece of property and, therefore. does not answer the requirements of the Statute of Frauds are found in *Ray* v. *Card*, 21 R. I. 362, 43 A. 846, ("that lot"); *Calci* v. *Caimillo*, 46 R. I. 305, 127 A. 361. ("the buildings I have sold"); *Cunha* v. *Callery*, 29 R. I. 230, 69 A. 1001, ("this place").

[3]In *Cunha* v. *Callery* it appears that the agreement said only, "I have sold this place to [X] for $2.100 cash, and is all clear of mortgage. (Signed) [Y]." The court refused to allow the obvious defect in the description to be remedied by reference to a deed subsequently prepared and containing a complete description of the property. Its reason was that the original writing contained no reference to the deed and that the two could not therefore be considered together as a memorandum within the meaning of the Statute of Frauds.

468

requirement and can assist a buyer only if what appears in the signed agreement, amplified by what is set out in the collateral writing, identifies the boundaries of the land bargained for with accuracy, and furnishes a description which is so definite that it can be applied exclusively to particular acreage. *Sholovitz* v. *Noorigian,* 42 R. I. 282, 107 A. 94; *Preble* v. *Higgins,* 43 R. I. 10, 109 A. 707.

In this case the supplemental paper is of no assistance since the topographical map obviously does not remedy the deficiencies of the agreement. It sets out no courses or distances of what is to be conveyed, and gives no boundaries. Neither does it, in any manner, suggest, except perhaps to an expert, what, if any, specific portion of the Entwistle Farm will satisfy the terms of the agreement. And, while it may well be that a surveyor or one skilled in reading contour or topographical maps could by reference to the Waterman survey find a basis for preparing a deed of "30 acres more or less * * * to which city water can be brought using the elevation of 220 as a guide to determining the boundaries," there is nothing in the record before us which even remotely suggests that this was or could be done. In short, we can find nothing in the original agreement, even when supplemented by the survey, which in any way enables us to identify the 30 acres that the sellers agreed to sell and the buyer to buy. Inasmuch as the description of the premises to be conveyed is unascertainable from the writing itself, or by reference to the map, the requirements of the Statute of Frauds are not satisfied and the judgment below must be affirmed.

The respondent's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remitted to the Superior Court for further proceedings.

*Francis A. Manzi,* for complainants.

*John P. Bourcier,* for respondent.