[No. 305-41345-1.   Division One—Panel 2.   February 22, 1971.]

KIMON G. KAPETAN *et al.*, *Appellants*, v. W. ELLSWORTH KELSO *et al.*, *Respondents*.

*Mosler, Acheson, Smith & Mosler* and *Walter Scott Acheson,* for appellants.

*Langlie & Prager* and *Arthur S. Langlie,* for respondents.

FARRIS, J.—On the 18th day of September, 1967, Kimon G. Kapetan and Mary Kapetan, his wife, and W. Ellsworth Kelso and Phyllis G. Kelso, his wife, entered into an "Agreement To Lease." The subject matter of the agreement was a theatre-restaurant which was to be constructed on land owned by the Kelsos. The instrument recited that it was an "irrevocable contract for the within defined purposes binding the parties without exception, . . ." The project could not be completed because of the inability of the Kelsos to obtain financing and to provide the necessary parking. The Kapetans sued for specific performance or in the alternative for damages for breach. It is not disputed that the Kelsos made a good faith effort to obtain financing and the necessary parking area. It is admitted that the contract cannot now be specifically performed. Kapetan argues that he is entitled to damages which include estimated lost profits and reimbursement for funds expended in reliance upon the agreement. The trial court sustained Kelso's position that the document was an agreement to agree later upon a formal lease and that the construction of the restaurant building and its future lease was contingent upon obtaining adequate financing and the availability of adequate parking facilities to comply with the city of Seattle codes and regulations. Kapetan appeals from a judgment dismissing his complaint. He argues that the obtaining of financing and the securing of necessary parking were promises which were breached.

In *Sandeman v. Sayres,* 50 Wn.2d 539, 541, 314 P.2d 428 (1957) the court noted:

An agreement for an agreement, or in other words, an agreement to do something which requires a further meeting of the minds of the parties and without which it would not be complete is unenforcible.

■■■ The "Agreement To Lease" does not fix the rental nor does it contain a formula from which the rental can be computed. Appellants argue that paragraph 8[1] contains the formula. The trial court disagreed. Although the paragraph provides that the lessor will recover "the actual cost of constructing the building . . . within 12 years" whether the parties intended to limit the rental to a recovery of only the actual cost of construction without an additional sum to cover other expenses involved in putting the project together, real estate taxes, interest on the construction loan, and a reasonable return on the investment is a question of fact. The language used does not *limit* the rental, for a period of 12 years, to a return of "the actual cost of the building." Further, the language of paragraphs 9[2] and 11[3] suggests that the parties intended to merely agree to agree later on a formal lease.

Parol evidence was properly admitted.

[W]e have many times held that parol evidence is admissible to show that a written instrument is not to become a binding obligation except upon the happening of a certain event. Such evidence does not vary or contradict the terms of the written instrument. It merely shows what must occur before the agreement is to take effect.

*Fleming v. August,* 48 Wn.2d 131, 134, 291 P.2d 639 (1955).

"Conditions precedent" are those facts and events, occuring subsequently to the making of a valid contract,

[1]"It is further agreed by both parties that the contemplated lease shall provide for payment of rent on a monthly basis in relation to the actual cost of constructing the building and rent shall be computed so as to pay within 12 years the First Parties cost of construction."

[2]"It is further agreed by both parties that a suitable lease in accordance with the intention of the parties and in conformance with certain basic terms expressed herein be entered into and executed by the parties within a reasonable time after the execution of this agreement."

[3]"It is further agreed by both parties that the terms of the contemplated lease shall commence upon the completion of the building of the restaurant and the availability of the parking facilities.

"In other words the terms of the contemplated lease shall commence when said restaurant and the parking lot as an adjunct thereto are ready to do business."

that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available.

*Ross v. Harding,* 64 Wn.2d 231, 236, 391 P.2d 526 (1964).

Upon conflicting evidence, the trial court found that

> The parties agreed that the construction of the restaurant building and its future lease was contingent upon the obtaining of adequate financing and the availability and acquisition of adequate parking facilities to comply with the City of Seattle codes and regulations.

Finding of fact 7.

This court cannot substitute its judgment for that of the trial court on disputed factual issues. When there is substantial evidence to support the trial court's findings, they will not be disturbed on review. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959); *O'Byrne v. Spokane,* 67 Wn.2d 132, 406 P.2d 595 (1965). The "Agreement To Lease" was merely an agreement to contract for a lease in the future. In addition, it was conditioned upon obtaining of financing and adequate parking facilities—conditions which were not met. Either of these conclusions renders the contract unenforceable. We do not reach the questions of whether the consideration was adequate or whether anticipated profits were capable of computation.

Affirmed.

JAMES and SWANSON, JJ., concur.